**John B. HUGHES and Opal Hughes, Plaintiffs–Respondents,**

v.

**Coleman ESTES and Iris D. Estes, Defendants–Appellants.**

No. 16220.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 7, 1990.

 

Christopher J. Stark, Springfield, for plaintiffs-respondents.

John Cowherd, Stemmons & Stemmons, Mt. Vernon, for defendants-appellants.

MAUS, Judge.

By their petition, plaintiffs John B. Hughes and Opal H. Hughes sought recovery against defendants, Coleman Estes and Iris D. Estes because the defendants, by a fraudulent misrepresentation, induced the plaintiffs to purchase an apartment building. A jury awarded the plaintiffs a judgment for actual damages of $9,500 against both defendants and a judgment for punitive damages of $10,000 against defendant Iris D. Estes. The defendants state four points on appeal.

This opinion should not be construed as deciding any other issues inherent in the case. Only a broad outline of the facts is necessary as a background for consideration of these stated points. Additional evidence will be noted where relevant to a point. It is trite to observe "[i]n testing the sufficiency of the evidence, we must view the evidence in the light most favorable to the jury's verdict and afford the prevailing party the benefit of all reasonable inferences which can be drawn from the evidence." *Melton v. Illinois Cent. Gulf R. Co.*, 763 S.W.2d 321, 324 (Mo.App. 1988).

The defendants owned an eight unit apartment building at 632 W. Walnut in Springfield. After a friend informed her of their possible interest, defendant Iris D. Estes (also known and referred to as "Sue Estes"), called Opal Hughes to sell the plaintiffs the apartment building. A few days later, the parties met at the apartment building. They looked at some of the apartments and briefly inspected the common areas and exterior. Opal Hughes asked Sue Estes if she knew of any problems with the building. Sue Estes answered no.

Negotiations followed and a week or two later the parties informally agreed upon the plaintiffs' purchase for $79,000. On October 29, 1982, they met at the office of defendants' attorney for closing. While waiting, Opal Hughes again asked Sue Estes if there were any problems with the building and Sue Estes answered no. That day the attorney prepared and the parties executed a "contract for deed" providing for the purchase by the plaintiffs, with a $3,000 down payment and the balance to be paid in specified installments. Possession was surrendered to the plaintiffs.

In March 1983, the plaintiffs received a "Field Correction Notice" from the Department of Building Regulations of the City of Springfield. This notice listed six defects in the apartment building that had to be corrected. Two of the defects required major expenditures. They were upgrading the electrical system from the inadequate 60 amp. service and tuckpointing the walls of the brick apartment building.

The plaintiffs presented records of the Department of Building Regulations pertaining to 632 W. Walnut. Those records included the following. A similar notice issued September 20, 1982 to Kevin Sharp, and the envelope in which that notice was returned.[1] A similar notice issued October 12, 1982 to Susie Estes at *936 E.* Walnut. (Emphasis added.) A similar notice issued November 19, 1982 to Susie Estes at 936 E. Walnut. A similar notice issued May 23, 1983 to Susie Estes at 936 E. Walnut. Sue Estes denied receiving the notice issued October 12, 1982. She admitted receiving the subsequent notices.

On April 25, 1983, the plaintiffs tendered possession of the property to the defendants. A few days later, Opal Hughes gave the keys to Coleman Estes. The defendants accepted the property.

The defendants' first point is that the plaintiffs failed to establish they knew of the defects because the plaintiffs did not establish a presumption of the receipt by mail of the notice dated October 12, 1982, before the transaction was closed on October 29, 1982. They argue the plaintiffs did not establish the Department of Building Regulations handled a large volume of mail so as to excuse direct proof of mailing within the doctrine followed in *Lake St. Louis Community Ass'n v. Ringwald*, 652 S.W.2d 158 (Mo.App.1983). They also contend there was insufficient evidence of "'settled custom·and usage of [the sender's] office, regularly and systematically followed in the transaction of its business'". *First Nat. Bank of Independence v. Mid–Century Ins. Co.*, 559 S.W.2d 50, 52 (Mo.App.1977). The plaintiffs cite and rely upon *Armour & Co. v. American Automobile Ins. Co.*, 336 Mo. 551, 80 S.W.2d 685 (1935).

■ It is not necessary to consider the applicability of that doctrine. The testimony of Sharon Maness included the following. She was employed in the Building Regulations Department. The file pertain-

---

**1.** There is no explanation why that notice was sent to an individual named Kevin Sharp.

ing to 632 W. Walnut had been kept under her care, custody and control. Notices issued by the department are sent out the day they are dated. The notices of October 12, 1982, and November 19, 1982, were sent to Susie Estes at 936 E. Walnut. She testified the following was a correct summary of events reflected in the file.

"Q And one notice was sent to Mr. Sharp and that came back. Another notice was sent to Susie Estes, that one didn't come back, and another notice was sent to Susie Estes and that one didn't come back. And then this notice was sent to Mr. and Mrs. Hughes, is that correct?

A That's right."

The foregoing testimony was admitted without objection, as was the file copy of the notice issued October 12, 1982.

"It is no longer open to question but that in this state testimony of a witness that he 'mailed' a letter is sufficient to raise the presumption of receipt by the addressee in due course. *Ward v. Storage Co.*, 119 Mo.App. 83, 95 S.W. 964; *Peirson–Lathrop Grain Co. v. Barker* (Mo.App.) 223 S.W. 941, loc. cit. 943.

'The testimony that a letter was "mailed" to the addressee is equivalent to a statement by the witness that it was properly addressed, stamped, and deposited in a proper place for the receipt of mail. Such testimony is sufficient to raise a presumption that it was received in due course.' *J.L. Price Brokerage Co. v. Ry. Co.*, 207 Mo.App. 8, 230 S.W. 374, loc. cit. 377; *Rolla State Bank v. Pezoldt*, 95 Mo.App. 404, loc. cit. 411, 69 S.W. 51." *Williams v. Northeast Mut. Ins. Ass'n*, 51 S.W.2d 142, 143[2] (Mo. App.1932).

The testimony of Sharon Maness met those standards and was a sufficient basis for the jury to find Sue Estes received the notice issued October 12, 1982. The inference of receipt from that testimony was supported by Sue Estes' admission she did receive the notices issued November 19, 1982, and May 23, 1983, to her at the same address. See Proof of Mailing by Evidence of Business or Office Custom, 45 A.L.R.4th

476 (1986); *First Nat. Bank of Independence v. Mid–Century Ins. Co.*, supra. The point is denied.

■ Defendants' second point is that the evidence is insufficient to support the verdict because the plaintiffs "conducted their own investigation and inspection of the building and, hence, are presumed to be guided by their own conclusions and judgments and are not allowed to rely on appellants' alleged misrepresentation regarding the property." They base this contention on the facts the plaintiffs drove by the building twice and looked at the building once. An extended discussion is not necessary. The plaintiffs' inspection was brief and cursory. Mr. Hughes testified that he wouldn't have recognized the significance of the crumbling mortar or discovered the inadequate wiring system had he inspected in more detail. There was no evidence to establish those defects should have been apparent to him.

The defendants' contention, and plaintiffs' duty of inspection, are to be considered in the light of the following observation.

"And again in *Davis v. Forman*, 229 Mo. 27, 48, 129 S.W. 213, 220: 'But, if defendants were guilty of the misrepresentations or concealments charged, they are in no position to complain of the plaintiff for having too long trusted in the truth of their statements. The following quotation from Morawetz on Corporations, § 100, cited in respondent's brief, very clearly states the law: "Hence, it was said by the Lord Chancellor (Chelmsford) in the House of Lords: 'It appears to me that, where once it is established that there has been any fraudulent misrepresentations or willful concealment by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry. He had a right to retort upon his objector: "You at least, who have stated what is untrue or have concealed the truth, for the purpose of drawing me into a contract, cannot accuse me of want of caution, because I relied implicitly upon your fairness and

honesty." ' " ' ". *State ex rel. Union Pac. R. Co. v. Bland,* 324 Mo. 601, 609, 23 S.W.2d 1029, 1032 (1929).

Also see *Bertram v. Kempster,* 216 S.W.2d 494 (Mo.1949). The defendants made a positive misrepresentation and the jury was entitled to find the plaintiffs reasonably relied upon that representation. *Tietjens v. General Motors Corp.,* 418 S.W.2d 75 (Mo.1967); *Fox v. Ferguson,* 765 S.W.2d 689 (Mo.App.1989). The second point has no merit.

■ The defendants' third point is that the award of actual damages of $9,500 is excessive "in that respondents proved loss of $14,006.00 and admitted receiving $6,600.00 in rents from the property during the time that they possessed same and, therefore, respondents were entitled at most to actual damages of $7,406.00." The plaintiffs seek to justify the award upon the basis of the "loss of the bargain". They cite *Auffenberg v. Hafley,* 457 S.W.2d 929 (Mo.App.1970).

■ Recovery upon the basis of the loss of the bargain is not available when the transaction has been rescinded. *Salmon v. Brookshire,* 301 S.W.2d 48 (Mo.App.1957). However, an instruction submitted by the defendants (MAI 4.01 [1980 Revision] [Modified]) authorized the jury to "award Plaintiffs such sums as you believe will fairly and justly compensate Plaintiffs for any damages you believe they sustained".

In addition to the out-of-pocket expenses, there was evidence that, in running and improving the apartment building, the plaintiffs worked extensively in cleaning, painting, and repairing the building. "Where the value of services is a matter of common knowledge, the trier of fact may determine value from its own knowledge." *Matter of Estate of Enger,* 616 S.W.2d 137, 138 (Mo.App.1981). The evidence of the plaintiffs' personal labor justified the jury in finding the reasonable value of that labor was $2,094 and awarding plaintiffs actual damages of $9,500.

■ The defendants' final point is "[t]he trial court erred in failing to sustain appellants' motion for judgment notwithstanding the verdict or in the alternative for new trial since punitive damages instructions Numbers 5 and 11 should not have been given to the jury for the reason that said instructions erroneously define malice as required for the award of punitive damages, and said failure of the trial court to properly instruct the jury was prejudicial to appellant Iris D. Estes." The defendants do not complain of the sufficiency of the evidence to sustain an award of punitive damages. In answer to the point stated, the plaintiffs argue that since the defendants offered instructions 5 and 11, the defendants cannot be heard to say those instructions were erroneous. They cite *Smith v. Norman,* 586 S.W.2d 84 (Mo.App. 1979).

In their reply brief, the defendants argue as follows. "In this case, the punitive damages instructions, while taken by the court from those prepared by Defendants' counsel, were not given on Defendants' behalf or at their request. Plaintiffs were, naturally, the parties seeking the award of punitive damages, therefore, instructions 5 and 11 were given at their behalf and at their request."

This argument is not supported by the record. The court's file copy of instructions 5 and 11 each bear the following notation: "Tendered by Defendants". The point therefore has no merit. *Lazane v. Bean,* 782 S.W.2d 804 (Mo.App.1990). The judgment is affirmed.

HOGAN, C.J., and SHRUM, J., concur.